Salvador POU, Jr., Plaintiff,

v.

**U.S. DRUG ENFORCEMENT ADMINIS-TRATION, Joseph Loszynzki, Robert Fritzen, James L. Rogers, Defendants.**

No. 91 Civ. 6208 (JES).

United States District Court, S.D. New York.

April 26, 1996.

Salvador Pou, Jr., Ossining, New York, Pro Se.

Mary Jo White, United States Attorney for the Southern District of New York, New York City, Attorney for Defendants; Edward Scarvalone, Assistant United States Attorney, of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to 42 U.S.C. § 1983, plaintiff Salvador Pou,[1] acting *pro se,* brings the instant action against defendants United States Drug Enforcement Agency (the "DEA"), Joseph Loszynzki, Robert Fritzen and James L. Rogers seeking to recover $18,200 in cash seized by the DEA and forfeited to the United States Government (the "Government"). Pou claims that defendants conducted an illegal search and seizure and gave him inadequate notice of the forfeiture proceeding in violation of his federal statutory and constitutional rights. Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendants DEA, Fritzen and Rogers (collectively "defendants") move to dismiss the amended complaint for lack of subject matter jurisdiction and failure to state a claim.[2] In the alternative, pursuant to Federal Rule of Civil Procedure 56(c), defendants move for summary judgment on the ground that the forfeiture notice complied with both statutory and constitutional requirements and that collateral estoppel and qualified immunity bar the claim for illegal search and seizure.[3] For the

---

1. Salvador Pou is also spelled "Salvatore" in documents filed in the instant action.

2. Defendant Joseph Loszynski, whose name is spelled "Loszynzki" in certain filings herein, does not join in the instant motions.

3. In their moving papers, defendants notified Pou that summary judgment would be sought as an alternative remedy, and Pou has filed a memorandum of law, an affidavit and a statement of undisputed facts pursuant to Local Rule 3(g) in

reasons set forth below, defendants' motion for summary judgment is granted.

## BACKGROUND

In or about 1988, the New York State Police and the DEA Central New York Drug Enforcement Task Force (the "DEA Task Force") conducted an investigation into narcotics trafficking in Jefferson County, New York. *See* Affidavit of John Blumer Sworn to September 29, 1988 ("First Blumer Aff.") ¶ 3. Defendants Robert Fritzen and James Rogers are New York State Police investigators who served as members of the DEA Task Force and participated in the aforesaid investigation. *See* Declaration of Robert Fritzen Sworn to November 26, 1993 ("Fritzen Decl.") ¶ 1; Declaration of James L. Rogers Sworn to November 18, 1993 ("Rogers Decl.") ¶ 1; Plaintiff's Statement Pursuant to Rule 3(g) ("Pltff. 3(g) Stmt.") ¶ 2, 3.

On October 16, 1988, New York State Police and DEA Task Force agents pulled over the vehicle driven by Salvador Pou, Jr. and arrested him on drug charges in Jefferson County, New York. *See* Complaint ("Compl.") ¶ IV.1; First Blumer Aff. ¶ 3; Affidavit of John Blumer Sworn To October 16, 1988 ("Second Blumer Aff.") ¶ 2. Following the arrest, DEA Task Force Investigator Matthew Tynan searched Pou's person and vehicle pursuant to a search warrant. *See* Fritzen Decl. ¶ 7; Scarvalone Decl. Exh. F. at 1162; Pltff. 3(g) Stmt. ¶ 7. The search revealed, *inter alia*, $18,200 in currency, which was thereafter seized by DEA Task Force Investigators Brian Tousant and Joseph Loszynski as proceeds or instrumentalities of a drug crime. Compl. ¶¶ IV.2. Defendant Fritzen was present during but did not participate in either the search or the seizure. *See* Fritzen Decl. ¶ 7-9. Defendant Rogers participated in the surveillance on that day but was not present during the search of the vehicle. *See* Rogers Decl. ¶ 6-7.

On January 17, 1989, the DEA commenced proceedings to forfeit the $18,200 seized from Pou's vehicle. *See* Declaration of James F.

Bohn Sworn to October 29, 1991 ("Bohn" Decl.) ¶ 4(b). In an attempt to comply with statutory notice requirements, the DEA arranged publication of notice of the forfeiture for three successive weeks in *USA Today*, a newspaper of general circulation in the Southern District of New York. *See* Bohn Decl. ¶ 4(d).

In addition, on January 17, 1989, the DEA mailed two copies of the forfeiture notice to Pou by certified mail, return receipt requested. *See* Bohn Dec. ¶ 4(b) & (c). The first copy of the forfeiture notice, addressed to the Jefferson County Jail in Watertown, New York, was returned to the DEA by the Postal Service unsigned. *See* Bohn Decl. ¶ 4(b). The second copy, addressed to what the DEA believed at that time to be Pou's residence at 106 49th Avenue in Queens, New York, was returned to the DEA by the Postal Service marked "no such number." *Id.* ¶ 4(c).

Upon investigation, the DEA Office of Forfeiture Counsel thereafter learned that Pou's correct address was 106–27 49th Street, Queens, New York. *See* Declaration of William J. Snider Sworn to July 26, 1994 ("Snider Decl.") ¶ 6. On March 24, 1989, the DEA sent a third notice to that address by certified mail, return receipt requested (the "March 24 forfeiture notice"). *See* Bohn Decl. ¶ 4(c), Exh. 6. Thereafter, the DEA received from the Postal Service a signed postal receipt card from the March 24 forfeiture notice bearing the signature "Salvatore Pou." *See* Bohn Decl., Exh. 7.

On August 3, 1989, having received no claims for the $18,200, the DEA declared the $18,200 in currency administratively forfeited to the United States pursuant to the federal forfeiture statutes, 19 U.S.C. §§ 1607–1618 and 21 U.S.C. § 881. *See* Bohn Decl. ¶ 4(f), Exh. 8.

In the underlying conspiracy trial in the County Court, Criminal Term for Jefferson County, Pou moved to suppress, *inter alia*, the $18,200 seized from Pou's vehicle on the ground that there had been no probable

opposition to defendants' motion for summary judgment. Therefore, the Court treats defendants' motion as a motion for summary judg-

ment. *See In re G & A Books, Inc.*, 770 F.2d 288, 295 (2d Cir.1985).

cause for the search. *See* Scarvalone Decl. Exh. H. After conducting a four day hearing, the court ruled that probable cause for the search warrant had existed and denied Pou's suppression motion, *see* Fritzen Decl., Exh. J.

On June 11, 1990, Pou was convicted of conspiring to distribute narcotics in violation of N.Y. Penal Law § 105.15. *See* Scarvalone Decl., Exh. A. On appeal, Pou raised his claims of illegal search and seizure. *See* Scarvalone Decl. Exh. L, 24–33. The New York State Appellate Division for the Fourth Department affirmed his conviction. *See People v. Pou*, 185 A.D.2d 642, 585 N.Y.S.2d 911 (4th Dep't.1992).

In early January 1991, a neighbor residing in Pou's three story Queens residence delivered to Pou's wife the March 24, 1989 forfeiture notice. *See* Plaintiff's Memorandum of Law In Support of His Answer To Defendant's Motions To Dismiss The Amended Complaint Or For Summary Judgment ("Pltff. Mem. II") at 3. Shortly thereafter, Pou's wife mailed the March 24 forfeiture notice to Pou, who was at that time incarcerated at the Sing Sing Correctional Facility. *Id.* On January 10, 1991, Pou actually received the March 24 forfeiture notice forwarded by his wife.[4] *Id.*

On March 15, 1991, Pou filed the instant action against defendants DEA and DEA Task Force Agents Joseph Loszynski and Brian Tousant, whom Pou alleges conducted the search. By Order dated September 13, 1991, the complaint was dismissed *sua sponte* as against defendants Loszynski and Tousant on the ground that the complaint failed to state a cognizable constitutional claim.

On March 24, 1993, Pou filed an amended complaint in the instant action, which incorporates the original complaint by reference. In his amended complaint, Pou renewed his claims against the DEA and asserted for the first time claims against defendants Fritzen and Rogers in their individual and official capacities.[5] Read liberally, *see Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), the amended complaint alleges, *inter alia*, that Pou's constitutional rights were violated when his automobile was illegally searched by defendants Rogers and Fritzen and the $18,200 was seized by the DEA. In addition, Pou asserts that the $18,200 was forfeited without adequate notice, in violation of the federal forfeiture statute and his due process rights. Specifically, Pou alleges that he did not receive notice of the forfeiture until after August 3, 1989, the date his property was forfeited to the Government. Pou seeks the return of the $18,200 seized by the DEA and forfeited to the Government.[6]

---

4. For the purpose of defendants' motion for summary judgment, the Court will accept Pou's allegations as true and accurate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

5. In addition, Pou names defendant Loszynski in the caption of the amended complaint but asserts no claim against him except insofar as the amended complaint incorporates the original complaint. As set forth above, the original complaint was dismissed as against Loszynski. In addition, the record contains no indication that Pou has ever served process upon Loszynski. By Order dated February 6, 1996, the Court directed that, unless Pou demonstrates on or before March 3, 1996 that Loszynski was served with process or shows good cause why Loszynski was not served with process, the Court will dismiss the amended complaint as against defendant Loszynski. By Order dated March 19, 1996, the Court extended Pou's time to make such a showing until April 19, 1996. By submission dated April 9, 1996 entitled "Response to Order," Pou states that he has never served process upon Loszynski. Therefore, because Pou fails to allege

any reason, let alone good cause, for his failure to serve process upon Loszynski, the amended complaint shall be and hereby is dismissed without prejudice as to him.

6. In his Complaint, Pou also seeks $500,000 in "penalties" damages. Compl. ¶ 5. However, in a later filing, Pou abandons his claim for damages and limits the recovery sought to injunctive relief for return of the $18,200. *See* Plaintiff's Memorandum in Support of His Opposition ("Pltff. Mem. I") at 8 ("the complaint seeks the exact amount seized from Plaintiff and accordingly can be construed as a specific equitable remedy, namely return of the moneys taken"). In any event, even if they were not withdrawn, Pou's claim for punitive damages against the DEA is barred by sovereign immunity, *see* Federal Tort Claims Act, 28 U.S.C. § 2674; *see also Carlson v. Green*, 446 U.S. 14, 22, 100 S.Ct. 1468, 1473, 64 L.Ed.2d 15 (1980). In addition, because Pou's claims against defendants Rogers and Fritzen for compensatory damages are denied for the reasons set forth below, it follows that Pou's claims for punitive damages against

## DISCUSSION

 Pou claims that the March 24 forfeiture notice is statutorily defective because he did not sign the postal receipt card and did not actually receive the notice until almost a year and a half after the currency had been forfeited. Pursuant to 19 U.S.C. § 1607(a), an agency commencing forfeiture proceedings is required to publish and send written notice of the seizure and its intention to forfeit the property to any interested party.[7] The statutory notice requirements are satisfied by notice mailed to the interested party's last known address. *See Sarit v. U.S. Drug Enforcement Administration,* 987 F.2d 10, 13 (1st Cir.1993). It follows that written notice of the seizure sent to the interested party's undisputed home address by certified mail, return receipt requested satisfies the statutory requirements, especially where, as here, the DEA received a signed postal receipt bearing Pou's name, Pou concedes that the March 24 forfeiture notice was mailed to his correct residential address and Pou does not dispute that notice by publication was proper. *See* Pltff. 3(g) Stmt. ¶ 10; Pet.Mem. II at 5.

 Nor was the March 24 forfeiture notice constitutionally defective. It is well established that the constitutional notice requirements set forth in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), apply to notice of forfeiture proceedings. *See United States v. 51 Pieces of Real Property,* 17 F.3d 1306, 1316 (10th Cir.1994); *Taft v. United States,* 824 F.Supp. 455, 464 (D.Vt.1993); *Gonzales v. Baum,* 1992 WL 97223 at *2 (S.D.N.Y. Apr. 28, 1993); *Balogoun v. United States,* 1992 WL 394186 at *1 (E.D.N.Y. Dec. 11, 1992). Under the *Mullane* standard, due process is satisfied by " 'notice reasonably calculated,' under all of the circumstances, to apprise interested parties of the pendency of the action and afford them of an opportunity to present their objections." *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989) (quoting *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657) (other citations omitted).

 Neither due process nor the relevant forfeiture statute requires that a forfeiture claimant actually receive timely notice of an impending forfeiture. *See 51 Pieces of Real Property,* 17 F.3d at 1316 (citing *Weigner,* 852 F.2d at 649); *Taft,* 824 F.Supp. at 464; *Gonzales,* 1992 WL 97223 at *2; *Balogoun,* 1992 WL 394186 at *1. In the instant case, after the first two notices were returned as undelivered, the DEA conducted a field investigation and determined Pou's undisputed correct residential address. It then sought to effect notice by certified mail, return receipt requested, much greater notice than due process ordinarily requires. *See Weigner,* 852 F.2d at 650 ("under most circumstances, notice sent by ordinary mail is deemed reasonably calculated to inform interested parties that their property rights are in jeopardy"); *Torres v. $36,256.80 U.S. Currency,* 25 F.3d 1154 (2d Cir.1994) (due process may be satisfied "where the DEA made the reasonable assumption that first class mail had reached its destination"). Since the DEA had no reason to believe the signature on the certified mail receipt had been forged, as Pou claims, defendants clearly had reason to believe that notice had been received.[8] *See Weigner,* 852 F.2d at 650

---

Rogers and Fritzen must likewise be denied. *See Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1982) (§ 1983 plaintiff can recover punitive damages against government officers only for constitutionally violative conduct which was maliciously motivated or involved reckless or callous indifference to federal rights); *Carey v. Piphus,* 435 U.S. 247, 257 n. 11, 98 S.Ct. 1042, 1049 n. 11, 55 L.Ed.2d 252 (1978).

7. The applicable federal forfeiture statute provides, in pertinent part:

Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article.

Title 19 U.S.C. § 1607(a) (emphasis added).

8. That the signature appeared on the certified mail receipt as "Salvatore" and not "Salvador" Pou cannot rationally give rise to the inference that the defendants should have known that the signature had been forged. Indeed, the undisputed evidence establishes that the DEA reasonably believed that the correct spelling was "Salvatore." The DEA seizure file contained no sample of Pou's handwriting against which the DEA could have compared the signature on the postal receipt. *See* Reply Declaration of James

(signed certified mail receipt provides "virtually conclusive evidence that the notice was received"); *see also Balogoun,* 1992 WL 394186 at *1 (due process satisfied where agency mails notice to claimant's prison address, even though, due to prison transfer, notice is actually received after forfeiture takes place).[9]

█ Pou brings his claims against defendants Rogers and Fritzen pursuant to 42 U.S.C. § 1983, which requires proof that defendants deprived him of a right secured by the Constitution or laws of the United States. *See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988); *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled on other grounds in Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). To have acted under color of state law, the § 1983 defendant must "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West,* 487 U.S. at 49, 108 S.Ct. at 2255 (quoting *United States v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). To be liable under § 1983, a defendant's infringement must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982). Where, as here, it is undisputed that defendants Rogers and Frit-

zen were acting in their capacity as federal officers as DEA task force agents, they were not acting under color of state law, and a § 1983 claim must fail. *See Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30, n. 4. (2d Cir.1991).

█ The Court will therefore construe Pou's complaint against defendants Rogers and Fritzen as a *Bivens* claim. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (recognizing a private right of action against federal officers for violations of federal constitutional rights); *see also Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980).[10] Even so construed, the claims must be dismissed because they are barred by collateral estoppel. It is undisputed here that the validity of the search, seizure or arrest at issue was previously upheld in a state court suppression hearing. *See Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *United States Currency in the Amount of $228,536.00,* 895 F.2d 908, 917–18 (2d Cir) (dismissing fourth Amendment claim asserted by claimant in forfeiture action), *cert. denied sub nom Parker v. United States,* 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990); *Brown v. De Fillipis,* 717 F.Supp. 172, 178–79 (S.D.N.Y.1989) (dismissing § 1983 claim). During the conspira-

W. Harper Sworn to December 7, 1994 ¶ 4. Moreover, Pou's name is spelled "Salvatore" on all of the documents in the DEA file. *Id.* at ¶ 5.

9. In his memorandum in opposition, Pou asserts that the Court should construe his claim as seeking review pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* (the "A.P.A."). However, the A.P.A. does not serve as an independent basis for federal jurisdiction to review agency actions, *see Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). It is well-established that a federal court lacks subject matter jurisdiction to review the merits of administrative forfeiture decisions once the administrative process has begun. *See, e.g., United States v. One 1987 Jeep Wrangler,* 972 F.2d 472 (2d Cir. 1992). An exception exists which allows an appellate court jurisdiction to review a decision of an administrative agency which amounts to a refusal to exercise its discretion. *See id.* However, such review "'is limited to determining whether the agency followed the proper procedural safeguards when it declared [claimant's]

property summarily forfeited.'" *Id.* at 480 (quoting *Scarabin v. Drug Enforcement Admin.,* 919 F.2d 337 (5th Cir.1990)). Therefore, where, as here, notice of the forfeiture procedure is constitutionally and statutorily sufficient, the A.P.A. claim must be dismissed. *See Sarit v. D.E.A.,* 987 F.2d at 13.

10. Pou appears to have at one time abandoned his claims against Rogers and Fritzen in their individual capacities. *See* Pltff. 3(g) Stmt. at 3, n. 1 ("[t]he Plaintiff does not oppose the dismissal of the complaint as to defendants Rogers and Fritzen"); *see also* Plaintiff's Memorandum of Law In Opposition To Motion For Summary Judgment. ("Pltff. Mem. I") at 6 ("[p]laintiff has moved to withdraw all claims against Fritzen and Rogers in their individual capacity"). However, Pou appears to have re-asserted his *Bivens* claims in his most recent filing, *see* Pltff. Mem. II at 8–9, which the Court construes liberally, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), as renewing his *Bivens* claim.

cy trial, Pou moved to suppress the $18,200 on the ground that it was obtained during an illegal search and seizure. After conducting an extensive hearing, the trial court denied Pou's motion to suppress. Thereafter, Pou raised and the Appellate Division rejected Pou's search and seizure arguments on appeal.

■ In any event, Pou makes no allegations that Fritzen and Rogers were directly and personally responsible for the conduct complained of, or that they committed a specific wrongful act. Indeed, Pou alleges that the $18,200 was seized by DEA Task Force Agents Loszynski and Tousant, who are no longer defendants. See Compl. ¶ IV.1. Defendant Fritzen was present but participated in neither the searches nor the seizure of the currency. See Fritzen Decl. ¶ 7–9. Defendant Rogers participated in the surveillance on that day, but was not present at the time the vehicle was searched. See Rogers Decl. ¶ 6–7. It follows that no rational fact finder could find them liable for the alleged constitutional violations complained of.[11] See Williams v. Smith, 781 F.2d 319, 322 (2d Cir.1986); Barbera v. Smith, 836 F.2d 96, 99 (2d Cir.1987), cert. denied, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989); Washington Square Post # 1212 v. City of New York, 720 F.Supp. 337, 347 (S.D.N.Y.1989), rev'd on other grounds, 907 F.2d 1288 (2d Cir.1990); Lee v. Carlson, 645 F.Supp. 1430, 1436 (S.D.N.Y.1986), aff'd mem., 812 F.2d 712 (2d Cir.1987).

■ Furthermore, taking all of the facts alleged by Pou as true and construing all inferences drawn therefrom in Pou's favor, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), Fritzen and Rogers would be entitled to qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Butz v. Economou, 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). When Pou's vehicle was stopped on October 16, 1988, Fritzen and

Rogers knew that a search warrant authorizing the search of Pou's vehicle had been issued. See Fritzen Decl. ¶¶ 4, 7; Rogers Decl. ¶ 3. Under the circumstances as alleged, a reasonable officer would have believed that his reliance upon a facially valid search warrant obtained by another officer was lawful. See Salmon v. Schwarz, 948 F.2d 1131, 1140–41 (10th Cir.1991); Morris v. County of Tehama, 795 F.2d 791, 795 (9th Cir.1986).

### CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment shall be and hereby is granted. Accordingly, the Clerk of Court is directed to dismiss the complaint as to defendants DEA, Fritzen and Rogers.

It is **SO ORDERED.**

---

**11.** In his "Memorandum of Law in Support of His Answer," Pou claims for the first time that defendants Rogers and Fritzen violated Pou's rights under the Fourth and Fourteenth Amendments by choosing to seek forfeiture pursuant to the federal forfeiture statutes rather than pursuant to certain unspecified state forfeiture provisions. Id. at 9. Even if the Court were to construe Pou's complaint to include this claim, that claim would lack any conceivable merit.